David Henderson
Law Offices of David Henderson
3003 Minnesota Drive, Suite 203
Anchorage, AK 99503
Phone: 907-677-1234
Fax: 888-965-9338
dh@henderson-law.com
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| PAMELA GREENHALGH, Individually, and as Personal Representative of the Estate of Edward C. Greenhalgh, on behalf of said Estate, | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| UNITED STATES OF AMERICA, | ) ) |
| Defendant. | ) Case No. _____ ) |

## **COMPLAINT UNDER THE FEDERAL TORT CLAIMS ACT**

COME NOW plaintiffs and allege as follows:

### **Preliminary Allegations**

1) At all times pertinent, plaintiffs' decedent Edward C. Greenhalgh [hereinafter "Edward"] was an adult Alaskan Native residing in Kasilof, Alaska and Pamela Greenhalgh [hereinafter "Pamela"] was an adult Alaskan resident of Kasilof, Alaska.

2) At all times pertinent, Edward and Pamela were legally married as husband and wife.

3) On or about February 12, 2019, Edward died.

4) On or about February 25, 2019, Pamela petitioned the probate division of the Alaska Superior Court for the opening of Edward's estate in *Matter of Edward C. Greenhalgh,* Case No. 3KN-19-00056PR.

5) The Court granted her petition.

6) On March 23, 2019, the Probate Division of the Alaska Superior Court appointed Pamela as Personal Representative of Edward's estate.

7) Pamela is named herein as a plaintiff both individually, and in her capacity as Personal Representative of the Estate of Edward C. Greenhalgh.

8) The Alaska Native Medical Center [hereinafter "ANMC"] is, together with its associated clinics and facilities, a state-of-the art hospital and health-care facility offering comprehensive health-care to Alaska Natives.

9) ANMC is owned and operated by the Alaska Native Tribal Health Consortium, a non-profit tribal health organization and co-signatory to the Alaska Tribal Health Compact. As such, it receives funding from, and is an agent of, defendant United States vis-a-vis the Indian Health Service.

10) Defendant staffed the ANMC with various physicians, nurses, and medical practitioners of varying fields and specialties – either through employment or the granting

of staff privileges – who undertook to administer health-care and medical services to Edward.

11) Those practitioners included, but were not limited to:

    (a) Benjamin Koziner, M.D.;

    (b) Madhuri Kadiyala, M.D.;

    (c) Michael J. Lynch, M.D.;

    (d) Ewa Marta Szemraj, M.D.; and,

    (e) Ruth Nevils, M.D.

12) Said practitioners were, at all times pertinent, acting within the scope of their employment, staff-privileges, specialties, and certifications at the ANMC.

13) Each was also acting as agent and/or co-participant with the other.

14) More than six months ago, plaintiffs submitted the claim giving rise to the instant suit by way of a "Claim for Damage, Injury, or Death" form [Standard Form 95] filed with the appropriate federal agency or counsel, as contemplated by 28 USC § 2675(a).

15) Said agency or counsel has denied the claim, either expressly or by failing to make a final disposition of it within six months, as contemplated by 28 USC § 2675(a).

## General Allegations

16) Beginning in June 2014, and perhaps earlier, Edward underwent regular medical treatment as a patient at the ANMC.

17) Throughout this period, Edward presented with well-known signs, symptoms, comorbidities, characteristics and complaints that should have activated a

suspicion for cancer, and with that the administration of various diagnostic tests and procedures [including, but not limited to, an ultrasound or CT of the abdomen] that would have confirmed the existence of a potentially deadly renal cell cancer condition.

18) In fact, Edward did have a lower grade renal cell malignancy that was growing and metastasizing.

19) Even so, the various practitioners who tended to Edward at the ANMC did not suspect, test for, diagnose, monitor or treat the malignancy.

20) Their failure to do so enabled it to grow and thrive.

21) Ultimately, practitioners at the ANMC finally did detect and confirm that Edward did have the condition.

22) However, by that point, it was too late; after a long, painful, and agonizing period of suffering, misery, and decline, Edward ultimately succumbed to it.

23) Had medical practitioners at the ANMC's facilities tested-for, monitored, and treated Edward's renal cell cancer in a timely manner, they likely could have, and would have, arrested it far earlier, and averted Edward's suffering and early demise.

24) As a direct and proximate result of the above-alleged lapses in care, plaintiffs have and will incur economic losses, both past and future, including: (a) health-care expenses, past and future; (b) loss of earnings and earning capacity, past and future; (c) loss of household- and non-market services, past and future, and; (d) other consequential and out-of-pocket expenses and damages, past and future.

25) As a direct and proximate result of the above-described lapses in care, plaintiffs have and will suffer non-economic damages, both past and future, as allowed in AS 09.55.549(c).

### First Cause of Action – Negligence and Recklessness

26) Plaintiffs incorporate and reallege the foregoing paragraphs.

27) Defendant's agents, agencies, and/or employees breached the applicable standards of care with the proximate result that plaintiffs have sustained significant harm and damages.

28) Said lapses in care constituted a conscious disregard for plaintiffs' interests and recklessness within the contemplation of AS 09.55.549(f).

29) Defendant United States is liable to plaintiffs, including the Estate, for medical negligence, recklessness, survival, and wrongful death, as authorized and contemplated by AS 09.55.530 through .580, in the minimum sum of $100,000, the exact amount to be proved at trial.

### Second Cause of Action – Loss of Spousal Consortium

30) Plaintiffs incorporate and reallege the foregoing paragraphs.

31) As a direct and proximate result of the above-described medical negligence and harm, Pamela has and will suffer loss of spousal consortium, services, love, and support.

32) Defendant is liable to Pamela for loss of consortium in the minimum sum of $100,000 as to each, the exact amount to be proved at trial.

*Greenhalgh v. U.S.A.*                  5

WHEREFORE, plaintiffs pray for judgment as follows:

1) For compensatory damages, as alleged;

2) For costs and attorney's fees, as appropriate.

3) For such other relief as the court may deem just and proper.

DATED AT Anchorage, Alaska this 4th day of March, 2021.

        THE LAW OFFICES OF DAVID HENDERSON

        Attorneys for Plaintiffs

        /s/ David Henderson
        David Henderson
        Alaska Bar No. 9806014