IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

PAMELA GREENHALGH,
Individually, and as Personal
Representative of the Estate of Edward
C. Greenhalgh, on behalf of said Estate,

          Plaintiffs,

    vs.

UNITED STATES OF AMERICA,

          Defendant.

Case No. 3:21-cv-00052-JMK

**ORDER GRANTING
DEFENDANT'S MOTION
TO AMEND**

Before the Court at Docket 15 is the Government's Motion to Amend the

FTCA Scope Certification for Dr. Madhuri Kadiyala ("the Motion"). The Motion has been

fully briefed,[1] and oral argument was held before the Court on April 4, 2021, at 10 a.m. in

Anchorage, Alaska.[2] For the foregoing reasons, the Motion is GRANTED.

## I.  BACKGROUND

Plaintiff filed her Complaint on March 9, 2021, alleging medical negligence

by several physicians at Alaska Native Medical Center ("ANMC"), including

---

[1] *See* Docket 16; Docket 18.
[2] Docket 27.

Dr. Kadiyala.[3]  Plaintiff's spouse, Edward Greenhalgh, began treatment at ANMC in June 2014 and died in February 2019.  Plaintiff alleges that Mr. Greenhalgh was subject to medical malpractice throughout his treatment period, resulting in his death.[4]  Plaintiff alleges that Mr. Greenhalgh's physicians were acting within the scope of their federal employment at ANMC during the treatment period.[5]  Because ANMC is an agent of the United States, Plaintiff's claims are governed by the Federal Torts Claim Act ("FTCA"), 28 U.S.C. § 2671 *et seq*.

Relying on information provided by ANMC,[6] the Government asserted in its Answer that Dr. Kadiyala was an employee of ANMC from "March 7, 2016, to December 29, 2017."[7]  In November 2021, the Government discovered that Dr. Kadiyala was not an employee of ANMC until April 4, 2016.[8]  The Government now moves to amend its scope certification for Dr. Kadiyala from "March 7, 2016, to December 29, 2017" to "April 4, 2016, to December 29, 2017."  The Government also moves to amend paragraph twelve of its Answer to reflect the revised scope.

---

[3]  Docket 1 at ¶ 11.

[4]  *Id.* at ¶¶ 16–25.

[5]  *Id.* at ¶ 12.  ANMC is an Alaska Native self-determination contractor under the Indian Self-Determination and Education Assistance Act of 1975 and is owned and operated by the Alaska Native Tribal Health Consortium ("ANTHC"), a tribal health organization.  As such, ANMC is an agent of the United States vis-à-vis the Indian Health Service.  *See* Docket 1 at ¶ 9; Docket 6 at ¶ 9.

[6]  Docket 15 at 5.

[7]  Docket 6 at ¶ 12; *see also* Docket 15 at 2 ("As is the standard practice, the United States made the scoping certification through its Answer because the jurisdictional issue was raised in the Complaint.  If Plaintiff had named Dr. Kadiyala as a defendant, the United States would have filed an independent scoping certification and requested to be substituted as defendant.").

[8]  Docket 15 at 5.

## II.   LEGAL STANDARD

Once a scheduling order has been entered pursuant to Federal Rule of Civil Procedure 16(b), a party must show "good cause" for failing to amend its pleading by the court-imposed deadline.[9]  If the party shows good cause to modify the schedule, the Court "should freely give leave [to amend] when justice so requires."[10]  Here, justice requires the Court to consider both the doctrine of judicial admissions and the Westfall Act, 28 U.S.C. § 2679.

Factual assertions in pleadings, unless amended, are considered judicial admissions that are conclusively binding on the party who made them.[11]  This is equally true for jurisdictional facts.[12]  The district court has discretion to accept or reject a judicial admission;[13] however, when a "party making an ostensible judicial admission explains the error in a subsequent pleading or by amendment, the trial court must accord the explanation due weight."[14]

In the present case, the judicial admission in the Government's Answer relates to its "scope certification."  The FTCA waives the United States' sovereign immunity for claims of negligence caused by employees of the federal government during

---

[9]  Fed. R. Civ. P. 16(b)(4).  Under the Court's Scheduling and Planning Order, the parties were required to file motions to amend by October 18, 2021.  *See* Docket 11 at 7.

[10]  Fed. R. Civ. P. 15(a)(2).

[11]  *American Title Ins. Co. v. Lacelaw Corp.,* 861 F.2d 224, 226 (9th Cir. 1988).

[12]  *De La Maza v. United States*, 215 F.2d 138, 140 (9th Cir. 1954) ("[I]f jurisdiction herein were an issue to be proven factually, it is well settled that one may stipulate to facts from which jurisdiction may be inferred.").

[13]  *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997) (citing *Am. Title Ins. Co.*, 861 F.2d at 227).

[14]  *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859–60 (9th Cir. 1995).

the scope of their employment.[15]  Under the Westfall Act, the Attorney General is authorized to issue a certification that "the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose."[16]  The scope certification serves to substitute the United States as the party defendant.[17]  Pursuant to the regulations implementing the Westfall Act, "[a] certification under this section may be withdrawn if a further evaluation of the relevant facts or the consideration of new or additional evidence calls for such action."[18]

## III.   DISCUSSION

Both parties agree that the Government expressly stated in its Answer that Dr. Kadiyala was an ANMC employee starting on March 7, 2016.  The question before this Court is whether the Government may withdraw that admission, and, in doing so, amend its Answer to state that Dr. Kadiyala began her federal employment on April 4, 2016.

The Government explains that (1) it is vested with the authority to withdraw scoping certifications that it discovers were in error; (2) scoping is a jurisdictional question; and (3) good cause exists for the amendment because the Government received new information that identified the scoping error after the deadline to amend had passed.[19]  In support, the Government offers Dr. Kadiyala's employment agreement with ANMC, which

---

[15] 28 U.S.C. § 1346(b)(1).
[16] 28 U.S.C. § 2679(d)(1).
[17] *Id.*
[18] 28 C.F.R. § 15.4(c).
[19] Docket 15 at 3, 4, 6.

states that "[t]he term of this Agreement is two years, beginning **April 4, 2016**,"[20] and Dr. Kadiyala's contract with ANMC as a CompHealth independent contractor from January 1, 2014, through April 1, 2016.[21]

In her Opposition, Plaintiff argues that (1) the Government is bound by its judicial admission that Dr. Kadiyala was a federal employee as of March 7, 2016; (2) Dr. Kadiyala was, in fact, a federal employee for that time period; (3) any amendment would be extremely prejudicial to Plaintiff; and (4) the Government is equitably estopped from seeking leave to amend.[22] However, at oral argument, Plaintiff conceded that the documents provided by the Government show that Dr. Kadiyala was likely not a federal employee before April 4, 2016. Plaintiff argues that justice still requires the Government to be bound to its judicial admission because she relied on that admission.

According "due weight" to the Government's explanation of its error, the Court finds that the admission should be withdrawn.[23] When the Government filed its Answer in May 2021, it relied on information provided by ANMC's legal affairs office, which stated that Dr. Kadiyala was an employee on March 7, 2016.[24] During subsequent discussions with Dr. Kadiyala, the Government suspected those dates were in error and sought additional discovery from ANMC. In November 2021, one month after the deadline to file a motion to amend, the Government received Dr. Kadiyala's employment

---

[20] Docket 15-1 at ¶ 5 (emphasis in original).
[21] Docket 18-1.
[22] Docket 16 at 1–2.
[23] *See Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859–60 (9th Cir. 1995).
[24] Docket 15 at 2.

documents. These documents unequivocally show that Dr. Kadiyala was a CompHealth independent contractor, not a federal employee, until April 4, 2016.[25] The Government then notified opposing counsel and filed the present motion. In sum, when the Government made its admission, it was relying on the best information available to it, and when the Government realized the error through additional discovery, it promptly moved to amend.[26]

The present situation is distinguishable from this Court's recent decision in *Ahvakana v. United States*.[27] In *Ahvakana*, the Government waited seven years to allege that plaintiffs filed their lawsuit two days before the FTCA's six-month exhaustion period had elapsed.[28] This Court declined to withdraw the Government's admission that plaintiffs had exhausted their administrative remedies, noting that "[t]his is not a case where new evidence was discovered, a mistake was quickly remedied, or new circumstances shed doubt on previously established facts." Accordingly, the Court concluded that the Government's explanation "that it simply forgot to review the dates" for nearly a decade "does not carry much weight."[29] Here, in contrast, new evidence that previously was unavailable to the Government was revealed early in the litigation, and the Government promptly responded. This explanation must be accorded due weight.[30]

---

[25] Docket 15-1 at ¶ 5; Docket 18-1.

[26] *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ("Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment.").

[27] *Ahvakana v. United States*, Case No. 3:13-cv-00010-JMK, 2022 WL 489613 (D. Alaska Feb. 17, 2022).

[28] *Id*. at *2.

[29] *Id.* at *6.

[30] *C.f. White v. United States*, No. CV-10-08128-PCT-JRG, 2011 WL 6175933, at *3 (D. Ariz. Dec. 9, 2011) (denying motion to amend scope of employment in FTCA case because "the United States has not explained to the court why its position on [employee's] employment status

The Westfall Act supports—but does not command—this result. The Government cites *Jamison v. Wiley*, in which the Fourth Circuit found that the Westfall Act specifically permits the United States to withdraw a scope certification "if a further evaluation of the relevant facts or the consideration of new or additional evidence calls for such action."[31] The court remarked that it would be "inconceivable" that Congress could have intended to give the Government power to issue scope certifications without also giving it the authority to withdraw any certifications that were issued in error.[32] Here, the Westfall Act encourages amendment, specifically because the Government acted with diligence in exercising its authority. The Court notes, however, that the holding in *Jamison* relates to Westfall Act substitution, not a motion to amend. To the extent the Government suggests otherwise, the Court is unconvinced that the Westfall Act permits the Government to avoid the "good cause" requirement of Rule 16 or retract judicial admissions without proper explanation.[33]

Plaintiff argues that the Government should be bound by its admission, regardless of the Westfall Act or any explanation of the error. Plaintiff cites a District of

---

has changed, nor has it offered any evidence that it was diligent in attempting to comply with the . . . amendment deadline.").

[31] 14 F.3d 222, 234 (4th Cir. 1994) (quoting 28 C.F.R. § 15.3(a)).

[32] *Id.*

[33] For example, in *White v. United States*, a party sued under the FTCA when a school bus driver negligently drove off the road. In its Answer, the Government admitted that the driver was a federal employee and acting within the scope of his employment. It then sought to withdraw that admission by moving to amend under Rule 16. The Court did not find good cause to amend and denied the motion. 2011 WL 6175933, at *3; *see also Sandoval v. United States*, Civil Action No. 7:21-cv-00291, 2021 WL 4990820, at *2 (S.D. Tex. Oct. 27, 2021) (treating statement in Government's answer that employee was acting within scope of federal employment as a binding judicial admission).

Montana decision adopting the Fourth Circuit's test for whether the Court should exercise its discretion in rejecting an admission.[34] "In relieving a party of a judicial admission, the court should be 'convinced that [1] an honest mistake had been made, [2] the original allegation was untrue, and [3] that justice requires relief.'"[35] Plaintiff's argument also fails under this test.

In reference to the first and second factor, Plaintiff's briefing asserts that there was no mistake and that the admission is correct.[36] However, at oral argument, Plaintiff acknowledged that the employment contracts show that Dr. Kadiyala was, in fact, an independent contractor before April 4, 2016.[37] The evidence before the Court convinces it that the original allegation was untrue, and an honest mistake had been made.[38] Therefore, the first and second factor weigh in favor of amendment.

Regarding the third factor, Plaintiff argues that she would be unfairly prejudiced by the amendment. The Government's admission "lulled Pamela's counsel into allowing her suit to suffer dismissal, arguably beyond the limitations period. If Pamela is now unable to proceed against Dr. Kadiyala, Pamela will have suffered forfeiture of a

---

[34] Docket 16 at 5.

[35] *Hoffman v. GEICO Ins. Co.*, Cause No. CV 06-83-M-JCL, 2007 WL 9710396, at *8 (D. Mont. Oct. 16, 2017) (quoting *Coral v. Gonse*, 330 F.2d 997, 998 n.1 (4th Cir. 1964)).

[36] Docket 16 at 6–7.

[37] When Plaintiff opposed the motion to amend, counsel had not yet received Dr. Kadiyala's independent contractor agreement that the Government appended to its Reply.

[38] This finding is only for the purposes of this Order. If the Government amends its Answer and scope certification, Plaintiff still may factually challenge the dates of Dr. Kadiyala's employment. *See Gutierrez de Martinez v. Lamagno*, 515 U.S. 417 (1995). The amendment contemplated by this Order will simply release the Government from the binding effect of its previous admission.

sizeable portion of her damages."[39] When the Government certified that Dr. Kadiyala was a federal employee starting March 7, 2016, it was "effectively and reliably signaling to the undersigned that he could . . . allow the state action to abate."[40] In sum, Plaintiff claims that the statute of limitations has run against Dr. Kadiyala, and as such, amendment would be "prejudicial in the extreme."[41]

        The Court is not persuaded that Plaintiff will suffer such significant prejudice. The impact of the amendment on Plaintiff's case is limited to Dr. Kadiyala's conduct during the four-week period from March 7, 2016, to April 4, 2016. Plaintiff confirmed that Dr. Kadiyala continued to treat Mr. Greenhalgh after April 4, 2016, and Plaintiff may recover for Dr. Kadiyala's alleged malpractice during that timeframe.[42] Further, at oral argument, Plaintiff acknowledged that Dr. Kadiyala is one of three doctors to treat Mr. Greenhalgh during the four-week period at issue. It simply is untrue that Plaintiff now is "unable to proceed" against Dr. Kadiyala or otherwise try the suit on the merits.[43]

        During oral argument, Plaintiff explained that this four-week period is crucial to her case because, as Mr. Greenhalgh's cancer developed, he was less likely to survive

---

[39] Docket 16 at 8 n.14.
[40] *Id*. at 12.
[41] *Id.*
[42] At oral argument, the parties disagreed about whether Dr. Kadiyala may be liable in the present suit for her conduct before April 4, 2016. The Government argues that Dr. Kadiyala still may be pled to this case before her federal employment; the Government simply will not represent her. Plaintiff argues that the statute of limitations has run, such that Dr. Kadiyala cannot be named as an individual. The Court does not address this issue because it does not affect its conclusion on this Motion.
[43] Docket 16 at 8, 12.

treatment. According to Plaintiff, Dr. Kadiyala was one of the last doctors to treat Mr. Greenhalgh while his cancer was still treatable; presumably, this window closed soon after April 2016. However, Plaintiff's own conduct does not support the dispositive nature of these four weeks. Plaintiff first sued Dr. Kadiyala in both state and federal court.[44] In May 2021, the Government answered Plaintiff's federal Complaint, stating that Dr. Kadiyala was a federal employee beginning March 7, 2016.[45] Because of the Government's admission, Plaintiff allowed the state court action to be dismissed.[46] Plaintiff therefore chose to dismiss any claims against Dr. Kadiyala based on her conduct before March 7, 2016—seemingly dismissing claims during the critical treatment window that Plaintiff now claims is necessary to her case. Second, as the Government notes, Plaintiff dismissed her state case in August 2019, before the parties' deadline to amend in the present case.[47] While the Court accepts that Plaintiff relied on the Government's Answer, that reliance does not create such prejudice that the Court should bind the Government to an admission which both parties acknowledge is incorrect.

Last, Plaintiff submits that the Government is equitably estopped from seeking leave to amend.[48] "Judicial estoppel is an equitable doctrine invoked by a court at its discretion. Its purpose is to protect the integrity of the judicial process by prohibiting

---

[44] *Id.* at 3; *see also Pamela Greenhalgh v. Madhuri Kadiyala, M.D. et al*, Case No. 3AN-20-09012 CI (Alaska Super. Ct. Nov. 9, 2020).

[45] Docket 6 at ¶ 12.

[46] Docket 16 at 3–4.

[47] *See* Docket 11 at 7; "Order re Dismissal for Failure to Serve," *Pamela Greenhalgh v. Madhuri Kadiyala, M.D. et al*, Case No. 3AN-20-09012 CI (Alaska Super. Ct. Aug. 23, 2021).

[48] Docket 16 at 13–15.

parties from deliberately changing positions according to the exigencies of the moment."[49] Plaintiff cites the requirements for equitable estoppel under Alaska state law: "the assertion of a position by conduct or word, reasonable reliance thereon by another party, and resulting prejudice."[50] However, "[e]ven if these requirements are present, an estoppel against the government will not be invoked if the public interest would be significantly prejudiced."[51]

As discussed, Plaintiff's reliance on the Government's Answer was not entirely reasonable, as she dismissed her state court action before the deadline to amend, and the Court does not find amendment will result in significant prejudice. More importantly, the public interest would be significantly impacted if the Court refused amendment. The Westfall Act explicitly authorizes the Government to withdraw its scope certification upon discovery of new evidence.[52] While this may not release the Government from Rule 16(b)'s "good cause" requirement, it certainly permits the United States to seek leave to amend—especially when amendment is not a result of bad faith or gamesmanship. The public has great interest in the federal government only representing federal employees as provided by law.[53] To evoke estoppel against the Government in this case would be contrary to both public policy and the public interest.

---

[49] *Ah Quin v. Cnty. of Kauai Dept. of Transp.*, 733 F.3d 267, 270 (9th Cir. 2013) (internal quotations and citation omitted).
[50] Docket 16 at 14 (quoting *Foster v. Hanni*, 841 P.2d 164, 171 (Alaska 1992)).
[51] *VECO Int'l, Inc. v. Alaska Pub. Offices Comm'n*, 753 P.2d 703, 709 (Alaska 1988) (citing *Mun. of Anchorage v. Schneider*, 685 P.2d 94, 97 (Alaska 1984)).
[52] 28 C.F.R. § 15.4(c).
[53] *See* 28 U.S.C. § 2679(d)(1).

## IV.  CONCLUSION

For the above reasons, Defendant's Motion to Amend at Docket 15 is

**GRANTED**.  Defendant shall file its Amended Answer as soon as practicable.

IT IS SO ORDERED this 31st day of May, 2022, at Anchorage, Alaska.

_/s/ Joshua M. Kindred_
JOSHUA M. KINDRED
United States District Judge